# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 696 | **DATE** | 9/19/2003 |
| **CASE TITLE** | Franklin Lunding, Jr. vs. Biocatalyst Resources, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: defendants' Rule 12(b)(6) motion to dismiss is granted in part and denied in part. The *mandamus* claims that plaintiff asserts in Count I are dismissed with prejudice. The interference with contract claims that plaintiff asserts against defendants Casey and Silverman in Counts IV and VI are dismissed without prejudice. In all other respects, defendants' motion to dismiss is denied. Plaintiff has fourteen days from the date of this Memorandum Opinion and Order to amend his complaint in accordance with this Opinion. STATUS HEARING SET FOR 10/15/03 AT 9:30A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 2 2 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 37 |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
SEP 2 2 2003

| | |
|---|---|
| FRANKLIN LUNDING, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 03 C 696 |
| ) | Paul E. Plunkett, Senior Judge |
| BIOCATALYST RESOURCES, ) | |
| INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Franklin Lunding, Jr. has sued defendants under a variety of theories for their alleged failure to tender certain stock, dividends and other payments to him. Defendants have filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss the complaint. For the reasons set forth below, the motion is granted in part and denied in part.

### Facts

In the early 1980s, Lunding, defendant Silverman and others formed The Prozyme Company. (Compl. ¶ 16.) Lunding was the president and CEO of Prozyme. (Id.) Sometime later, Silverman left Prozyme and formed PPL, a company that acted as a distributor for Prozyme. (Id. ¶ 17.)

In the early 1990s, Lunding formed a new company, Biocatalyst, to purchase all of the outstanding stock of both Prozyme and PPL. (Id. ¶¶ 19-20.) In early 1993, pursuant to an exchange/purchase agreement, Biocatalyst common stock was used to purchase the stock of both Prozyme and PPL. (Id. ¶ 19; id., Ex. A, Exchange/Purchase Agreement, Ex. B, Common Stock

37

Subscription Agreement.) In addition, Biocatalyst created a series of convertible preferred stock, which was exchanged for the Prozyme and PPL shareholders' agreement to release any claims they had against those companies. (Id. ¶¶ 21, 22; id., Ex. A, Exchange/Purchase Agreement, Ex. B, Preferred Stock Subscription Agreement.) As a result of the exchange/purchase, Lunding received 375 shares of Biocatalyst convertible preferred stock. (Id., Ex. A, Exchange/Purchase Agreement, Ex. D.)

In June 1999, Biocatalyst's shareholders voted to removed plaintiff as a director and CEO and replaced him with Ron Iorio. (Id. ¶ 25.)

In May 2001, Lunding tried to convert 275 of his shares of Biocatalyst preferred stock to common stock. (Id. ¶ 27.) The conversion rate in the preferred stock certificate of designations ("certificate") was four shares of common stock for each share of preferred. (Id. ¶ 28.) In addition, upon conversion, Lunding was entitled to the unpaid accumulated dividends on his preferred stock, which totaled $11,550.00. (Id. ¶ 29.)

Iorio, who was then the CEO of Biocatalyst, acknowledged receipt of Lunding's preferred stock, directed that it be converted and had the corporate stock ledger changed to reflect the conversion. (Id. ¶ 30.) However, the common stock was not issued and no accrued dividends were paid to Lunding. (Id.)

On May 14, 2002, Biocatalyst announced that the majority of convertible preferred shareholders had consented to rescind the 1993 issuance of the convertible preferred stock. (Id. ¶ 34.) Despite Lunding's demands, Biocatalyst refuses to reinstate the convertible preferred stock, issue common stock to him for the preferred stock he tendered or pay him for the accrued dividends on the preferred stock. (Id. ¶ 40.) Lunding contends that defendants' actions are tortious and breach various agreements and he seeks declaratory, monetary and mandamus relief.

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## Discussion

In Count I of his complaint, Lunding seeks a *writ of mandamus* ordering Biocatalyst to record Lunding's ownership of 1100 shares of common stock on its books, to provide Lunding with a stock certificate evidencing his ownership of those shares and to pay him the unpaid accumulated dividends that had accrued on his shares of preferred stock. Though *mandamus* is usually used to compel public officials to perform ministerial duties, the Illinois courts have also issued the writ to compel certain corporate actions. See, e.g., Nugent v. Riemore Nugent Collins, 412 N.E.2d 595, 596-99 (Ill. App. Ct. 1980) (affirming issuance of *writ of mandamus* ordering corporations to hold shareholders meetings and reissue stock to plaintiff); Schlossberg v. Lincoln Park W. Corp., 134 N.E.2d 661, 663 (Ill. App. Ct. 1956) (affirming issuance of *writ of mandamus* compelling corporation to transfer stock certificate to plaintiff). *Mandamus* is only appropriate, however, when three conditions are met: (1) plaintiff has a clear right to the requested relief; (2) the defendant has a clear duty to act; and (3) the defendant has the clear authority to comply with the writ. Ratliff-El v. Briley, 789 N.E.2d 781, 783 (Ill. App. Ct. 2003). Defendants say plaintiff has not alleged that he has clear right to any of the relief he requests.

The Court agrees. Though plaintiff alleges that he is the owner of 1100 shares of Biocatalyst common stock, having tendered 275 shares of preferred stock for conversion, he also alleges that the Biocatalyst Board rescinded the preferred stock before it was converted. (Compl. ¶¶ 1, 21-22, 27-28, 30, 33-34.) Having admitted that the ownership of the common stock is in dispute, plaintiff has not alleged that he has a clear right either to a stock certificate or to be noted as the stock's owner in Biocatalyst's books.

Plaintiff's request for unpaid dividends is similarly flawed. Plaintiff's alleged right to unpaid dividends derives from the certificate for the preferred stock. (Id. ¶¶ 27-29; Pl.'s Resp. Defs.' Mot. Dismiss, Ex. A, Certificate of Designations at ¶ 6(a).[1]) Because plaintiff admits that the validity of that stock is in question, he has not demonstrated a clear right to the dividends.

Moreover, even if plaintiff had alleged that there was no dispute over the validity of the preferred stock, he still could not maintain a *mandamus* action to recover the dividends. According to the certificate of designations, preferred shareholders "shall be entitled to receive . . . *when, if and as declared by the Board of Directors*, . . . cumulative cash dividends at a rate equal to six percent (6%) per annum . . . on the Liquidation Value . . . thereof in annual payments . . . on January 1 ('Dividend Payment Date'), commencing with the Dividend Payment Date on January 1, 1993." (Pl.'s Resp. Defs.' Mot. Dismiss, Ex. A, Certificate of Designations at ¶ 3(a)) (emphasis added). Plaintiff has not alleged that the Biocatalyst Board ever declared a dividend. Absent that allegation, plaintiff's *mandamus* action for payment of the unpaid dividends would have to be dismissed even if there were no doubt about the legitimacy of the preferred stock.

---

[1] An incomplete copy of this document is attached as an exhibit to plaintiff's complaint.

In Count II of his complaint, plaintiff seeks a declaration that defendants' rescission of the preferred stock was invalid. Defendants say that the claim for declaratory relief is redundant of plaintiff's breach of contract claim and, thus, must be dismissed.

The Court disagrees. If plaintiff prevails on his breach of contract claim, his remedy would be damages, not reinstatement of the preferred stock. A declaration that the rescission was invalid, however, might induce defendants to reinstate the stock voluntarily or, if necessary, support a request for injunctive relief. Bontkowski v. Smith, 305 F.3d 757, 761 (7th Cir. 2002) (noting that declaratory relief can be used "as a prelude or substitute for injunctive relief" when "the plaintiff wants a change in the defendant's conduct [and] believes that it will ensue from a declaration of the plaintiff's rights"). Defendants' motion to dismiss Count II is, therefore, denied.

In Count III, plaintiff alleges that Biocatalyst's rescission of the preferred stock breached the exchange/purchase agreement. To state a claim for breach of contract, "a party must allege the existence of a valid and enforceable contract, breach of contract by defendant, plaintiff's performance of all conditions required of him, and existence of damages as a consequence of breach." Rajkovich v. Alfred Mossner Co., 557 N.E.2d 496, 499-500 (Ill. App. Ct. 1990). Though plaintiff has alleged all of these elements, (Compl. ¶¶ 58-61), defendants contend that his claim still must be dismissed because the exhibits attached to the complaint establish that he gave no consideration for the preferred stock he received. (Mem. Law Supp. Defs.' Jt. Mot. Dismiss at 7.)

The Court disagrees. In relevant part, the subscription agreement, pursuant to which plaintiff acquired the preferred stock, states:

> I hereby agree to subscribe for and acquire the number of shares of Series A preferred stock of BioCatalyst Resources, Inc. . . . set forth on the signature page hereof . . . in exchange for my agreement to release [PPL] and The Prozyme Co., Inc. . . . from the

> obligations [they] may owe to me and the claims I may have against either or both of [them], as more specifically described on the signature page hereof.

(Compl., Ex. A, Exchange/Purchase Agreement, Ex. B, Preferred Stock Subscription Agreement.) The Court's copy of this document is unsigned, undated and contains no description of the specific claims that plaintiff released.

Plaintiff also signed a release in connection with the exchange of Prozyme and PPL's common stock for the common stock of Biocatalyst. Specifically, plaintiff agreed to:

> remise, release and forever discharge [Biocatalyst, Prozyme and PPL] . . . of and from all manner of actions, cause and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialities, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, variances, executions, claims and demands whatsoever, in law or in equity, which [plaintiff] . . . [has] or hereafter may have against [the companies], . . . or that [plaintiff] . . . ever had or shall or may have against [the companies] . . . for or by reason of any matter, cause or thing whatsoever which shall have arisen at any time prior to the date hereof.

(Id., Ex. A, Exchange/Purchase Agreement, Ex. A, Letter of Transmittal ¶ 5.) Once again, the Court's copy of this document is unsigned and undated.

Certainly, one interpretation of those documents is that plaintiff signed the general release in connection with the exchange of Prozyme and PPL common stock for Biocatalyst common stock and subsequently attempted to use some portion of the released claims as consideration for his receipt of Biocatalyst preferred stock. But, an equally plausible interpretation, at least at this stage, is that plaintiff first released selected claims against the companies as consideration for his receipt of Biocatalyst preferred stock and subsequently released any and all remaining claims in connection with the common stock exchange. In short, the exhibits to plaintiff's complaint do not unequivocally establish that there was no consideration for the preferred stock subscription agreement. Defendants' motion to dismiss Count III is, therefore, denied.

In Counts IV and VI, plaintiff alleges that the individual defendants intentionally caused Biocatalyst to breach the exchange/purchase agreement and preferred stock contract, respectively, by voting to rescind the preferred stock. According to plaintiff, the only people who could participate in the rescission vote were the owners of Biocatalyst preferred stock. (Id. ¶¶ 33-34.) Only eight of the ten individual defendants – Jerry Bey, Frank Lardino, Eileen Sam-Morris, James Neil, David Schoenfield, Mitchell Schoenfield, Norman Silverstein and J. Edward Willard – are alleged to have been preferred stock owners. (Id. ¶¶ 4, 6-10, 12-13.) Defendants Debra Casey and Marvin Silverman are alleged to have owned only Biocatalyst common stock. (Id. ¶¶ 5, 11.) Absent an allegation that Casey and Silverman were eligible to participate in the rescission vote, the contractual interference claims asserted against them must be dismissed.

Defendants say that the contractual interference claims asserted against the other individuals are also infirm because stockholders cannot, as a matter of law, be held liable for interfering with the contracts of the corporations they own. The Court disagrees. Certainly, this species of Illinois tort liability is narrow, but it does exist. According to the Illinois Supreme Court, corporate directors, officers and shareholders can be held liable for contractual interference if their actions were grounded not in their business judgment, but in their desire for personal gain or to harm someone else. HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 677-78 (Ill. 1989); Swager v. Couri, 395 N.E.2d 921, 927-29 (Ill. 1979). Plaintiff alleges that the individual defendants interfered with the exchange/purchase agreement and the preferred stock agreement to "increas[e] the value of their own Common Stock at the expense of [plaintiff's] Convertible Preferred Stock," though doing so injured the company by "substituting debt for equity."[2] (Compl. ¶¶ 67-69, 81-83.) Because plaintiff

---

[2]These allegations are not, as defendants believe, inconsistent with those made by plaintiff in paragraph one of his complaint. Plaintiff merely recounts defendants' version of events in that

-7-

has alleged that the individual defendants' conduct was motivated by malice not business judgment, he has stated viable interference claims against them.

In Count V, plaintiff alleges that Biocatalyst's rescission of the preferred stock breached the preferred stock agreement. The preferred stock agreement, the parties agree, consists of Biocatalyst's articles of incorporation and the preferred stock certificate. (Mem. Law Supp. Defs.' Jt. Mot. Dismiss at 8; Pl.'s Resp. Defs.' Mot. Dismiss at 9 n.6). Among other things, the preferred stock certificate says that the Biocatalyst Board adopted a resolution authorizing and creating 8,000 shares of Series A Preferred Stock. (Pl.'s Resp. Defs.' Mot. Dismiss, Ex. A, Certificate of Designations, Preamble & ¶ 1.) The certificate describes the dividend and conversion rights associated with the stock and states that: "No amendment to or waiver of this Certificate that would adversely affect the preferences or other privileges of the holders of Series A Preferred Stock will be binding or effective without the approval of the holders of at least a majority of the shares of Series A Preferred Stock then outstanding." (Id. ¶ 8(b); see id. ¶ 8(a) ("No amendment or modifications . . . of any provision hereof will be binding or effective without prior written consent of the holders of at least a majority of the shares of Series A Preferred Stock outstanding at the time such action is taken.").) The Biocatalyst Board apparently believed that this provision governed the rescission decision because the Board sought, and received, the consent of a majority of preferred shareholders before rescinding the preferred stock. (Compl. ¶¶ 33-34.)

Plaintiff contends that the Board's belief was incorrect. Rescinding the stock, plaintiff says, is different from amending or modifying the terms of the certificate. The absence of express authorization for rescission, plaintiff concludes, can only be interpreted as a prohibition of such action.

paragraph – "defendants asserted that some of the Preferred Stock . . . was issued without . . . adequate consideration"; he does not admit its validity.

The Court agrees with plaintiff, at least in part. The plain meaning of the word "amendment" is change. Defendants' alleged action did not change any of the terms or conditions of the stock certificate, it nullified it in total. Thus, Biocatalyst's decision to rescind the preferred stock does not fall within the amendment and modification provisions of the certificate.

The certificate's silence on the subject of rescission, however, does not necessarily mean that such action is forbidden. But, because that is one plausible interpretation, defendants' motion to dismiss the breach of contract claim asserted in Count V is denied.

In Count VII, plaintiff asserts a civil conspiracy claim against all defendants for their alleged agreement to interfere with his contracts by rescinding the preferred stock. To state a viable claim for civil conspiracy, plaintiff must allege that two or more people agreed to the commission of an unlawful act and that one of the conspirators committed a tortious act in furtherance of the conspiracy. Adcock v. Brakegate, Ltd., 645 N.E.2d 888, 894 (Ill. 1995). It is not necessary, however, for each defendant to have committed a tortious act. Rather, all conspirators are liable for the tortious acts committed by any other member of conspiracy. Id. at 895. Thus, plaintiff's failure to allege that defendants Casey and Silverman participated in the rescission vote is not fatal to his conspiracy claims against them.

Contrary to defendant's belief, plaintiff has also adequately alleged that defendants committed a tortious act. Though the Business Corporation Act authorizes defendants to exercise their voting rights as a group, see, e.g., 805 ILL. COMP. STAT. 5/7.65-7.71, they may do so only if their voting agreements do not violate state law or public policy. See 805 ILL. COMP. STAT. 5/7.71(a) ("Shareholders may unanimously agree in writing as to matters concerning the management of a corporation provided no fraud or apparent injury to the public or creditors is present, and no clearly prohibitory statutory language is violated."); Gumbiner v. Alden Inn, 59 N.E.2d 648, 651 (Ill. 1945)

("The owners of corporate shares may create a trust . . . for any purpose they deem desirable, so long as the purpose is not prohibited by statute or some rule of public policy."); Thompson v. J.D. Thompson Carnation Co., 116 N.E. 648, 649-50 (Ill. 1917) ("Contracts . . . by which the owners of a majority of the stock in a corporation agree to vote for certain persons for directors so as to secure to themselves the control and management of the corporation, are not illegal or void so long as no fraud is committed on the corporation or wrong done to the other stockholders."). Plaintiff has alleged that defendants agreed to interfere with his contracts with Biocatalyst by voting to rescind the stock and that some of them actually participated in the rescission vote. Those allegations are sufficient to state conspiracy claims against all defendants.

Count VIII is a breach of fiduciary duty claim asserted against defendant Neil. Plaintiff alleges that Neil, as the sole officer and director of Biocatalyst, had a fiduciary duty to plaintiff, as a preferred stockholder, which he breached by orchestrating the effort to rescind the stock. In Illinois, "[d]irectors owe a fiduciary duty to their corporations and to its shareholders." Stamp v. Touche Ross & Co., 636 N.E.2d 616, 620 (Ill. App. Ct. 1993). That duty requires them to "administer the corporate affairs for the common benefit of all the stockholders and exercise their best care, skill and judgment in the management of the corporate business solely in the interest of the corporation." Id. (internal quotation marks and citation omitted). Plaintiff alleges that Neil, while the sole director of Biocatalyst, took corporate action to rescind the preferred stock, solely to benefit himself and select others, thereby injuring plaintiff. (Compl. ¶¶ 94-97.) Those allegations state a viable breach of fiduciary duty claim against Neil.

In Count IX, the last count of the complaint, plaintiff alleges that defendant Silverman intentionally interfered with his employment contract with Biocatalyst by refusing to transfer money

from PPL to Biocatalyst to fund the payments due plaintiff. Defendants say that this claim is barred by *res judicata*, having been the subject of an arbitration between plaintiff and Biocatalyst. To support this argument, defendants have submitted the arbitration award and plaintiff's post-arbitration brief. (Mem. Law Supp. Defs.' Jt. Mot. Dismiss, Exs. B-C.) These documents are not attached or referred to in plaintiff's complaint. Thus, we can only consider them on this motion if they are judicially noticeable. See Fed. R. Civ. P. 12(b)(6) (stating that motion to dismiss must be converted to summary judgment motion if "matters outside the pleading are presented to and not excluded by the court"); Menominee Indian Tribe of Wis. v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998) ("A court may consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment."); Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) (court can consider documents that defendant attaches to motion to dismiss only if they are "referred to in the plaintiff's complaint and are central to her claim").

A court can take judicial notice of any adjudicative fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). According to the Seventh Circuit, "[j]udicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper." Menominee Indian Tribe, 161 F.3d at 456. Thus far, however, our court of appeals has not sanctioned judicial notice of arbitration-related documents. Given that court's admonition that judicial notice should be exercised cautiously and sparingly, General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080-81 (7th Cir. 1997), we decline to take judicial notice of the

arbitration documents defendants have submitted. Thus, defendants' motion to dismiss Count IX on the grounds of *res judicata* is denied.

*Res judicata* is not, however, the only weapon in defendants' arsenal. They also say that this claim is, at least in part, barred by the statute of limitations. The statute of limitations for this claim, the parties agree is five years. They disagree, however, on the date it begins to run. Defendants contend that it runs from the effective date of the agreement. (Mem. Supp. Defs.' Jt. Mot. Dismiss at 16.) Plaintiff says it starts running on the date of the breach. (Pl.'s Resp. Defs.' Mot. Dismiss at 15.)

The Illinois courts agree with defendants. "Tortious interference with contract is a contractual tort, for which the limitations period generally begins to run on the date of breach." Federal Signal Corp. v. Thorn Automated Sys., Inc., 693 N.E.2d 418, 421 (Ill. App. Ct. 1998). Plaintiff does not allege when the breach occurred. Because there are no allegations that establish that the breach occurred more than five years before plaintiff filed this action, we cannot dismiss Count IX as untimely.

Defendants also argue that the employment agreement itself bars plaintiff's claim. The agreement vests the payment obligation with Biocatalyst unless Biocatalyst assigns the agreement to Prozyme, PPL or "to any [of their] successors or affiliates." (Compl., Ex. A, Exchange/Purchase Agreement, Ex. F, Employment Agreement ¶ 18.) Because plaintiff does not allege that Biocatalyst assigned the agreement to PPL, defendants contend that Silverman, the president and a director of PPL, cannot be held liable for failing to fund it.

The Court disagrees. Even if the employment agreement was not assigned to PPL, Silverman could still be held liable for inducing its breach if he knew that Biocatalyst relied on PPL's money to fund it and he refused to transfer the money solely to injure plaintiff. Plaintiff has alleged the latter

element explicitly, by saying that Silverman refused to transfer the money "intentionally and maliciously in an attempt to injure [plaintiff]." (Compl. ¶¶ 102, 105.) Moreover, that allegation supports the inference that Silverman knew about the contract funding mechanism because his actions would have been spiteful only if he knew that the money was destined for plaintiff's pocket. In short, plaintiff has adequately alleged a contractual interference claim against Silverman. Defendants' motion to dismiss Count IX is, therefore, denied.

## Conclusion

For the reasons stated above, defendants' Rule 12(b)(6) motion to dismiss is granted in part and denied in part. The *mandamus* claims that plaintiff asserts in Count I are dismissed with prejudice. The interference with contract claims that plaintiff asserts against defendants Casey and Silverman in Counts IV and VI are dismissed without prejudice. In all other respects, defendants' motion to dismiss is denied. Plaintiff has fourteen days from the date of this Memorandum Opinion and Order to amend his complaint in accordance with this Opinion.

ENTER:

_____
**UNITED STATES DISTRICT JUDGE**

DATED: 9-19-03