Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 696 | **DATE** | 2/9/2004 |
| **CASE TITLE** | FRANKLIN LUNDING, JR. vs. BIOCATALYST RESOURCES, INC., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' joint combined motion pursuant to Rule 12(b)(1) and 12(b)(6) to dismiss the amended complaint is denied. Status hearing set for 3/10/04 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | FEB 1 0 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 54 |
| | Mail AO 450 form. | | | |
| ✓ | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANKLIN LUNDING, JR., | ) |
| Plaintiff, | ) |
| v. | ) No. 03 C 696 |
| | ) Paul E. Plunkett, Senior Judge |
| BIOCATALYST RESOURCES, INC., et al., | ) |
| Defendants. | ) |

FEB 1 0 2004

## MEMORANDUM OPINION AND ORDER

Franklin Lunding, Jr. has sued defendants under a variety of theories for their alleged failure to tender certain stock, dividends and other payments to him. Defendants have filed a joint combined motion pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6) to dismiss the amended complaint. For the reasons set forth below, the motion is denied.

### Facts

In the early 1980s, Lunding, defendant Silverman and others formed The Prozyme Company. (Am. Compl. ¶ 16.) Lunding was the president and CEO of Prozyme. (Id.) Sometime later, Silverman left Prozyme and formed PPL, a company that acted as a distributor for Prozyme. (Id. ¶ 17.)

In the early 1990s, Lunding formed a new company, Biocatalyst, to purchase all of the outstanding stock of both Prozyme and PPL. (Id. ¶¶ 19-20.) In early 1993, pursuant to an

exchange/purchase agreement, Biocatalyst common stock was used to purchase the stock of both Prozyme and PPL. (Id. ¶ 19; id., Ex. A, Exchange/Purchase Agreement, Ex. B, Common Stock Subscription Agreement.) In addition, Biocatalyst created a series of convertible preferred stock, which was exchanged for the Prozyme and PPL shareholders' agreement to release any claims they had against those companies. (Id. ¶¶ 21, 22; id., Ex. A, Exchange/Purchase Agreement, Ex. B, Preferred Stock Subscription Agreement.) As a result of the exchange/purchase, Lunding received 325 shares of Biocatalyst convertible preferred stock. (Id., Ex. A, Exchange/Purchase Agreement, Ex. D.)

Lunding became chairman, president and a director of Biocatalyst and entered into an employment agreement with the company that entitled him to a certain salary, bonus and other benefits throughout the life of the agreement. (Id. ¶ 20; id., Ex A, Exchange/Purchase Agreement, Ex. F, Employment Agreement.)

In June 1999, Biocatalyst's shareholders removed Lunding as a director and CEO and replaced him with Ron Iorio. (Id. ¶ 25.)

In May 2001, Lunding tried to convert 275 of his shares of Biocatalyst preferred stock to common stock. (Id. ¶ 27.) The conversion rate in the preferred stock certificate of designations ("certificate") was four shares of common stock for each share of preferred. (Id. ¶ 28.) In addition, upon conversion, Lunding was entitled to the unpaid accumulated dividends on his preferred stock, which totaled $11,550.00. (Id. ¶ 29.)

Iorio, who was then the CEO of Biocatalyst, acknowledged receipt of Lunding's preferred stock, directed that it be converted and had the corporate stock ledger changed to reflect the

conversion. (Id. ¶ 30.) However, the common stock was not issued and no accrued dividends were paid to Lunding. (Id.)

On May 14, 2002, Biocatalyst announced that the majority of convertible preferred shareholders had consented to rescind the 1993 issuance of the convertible preferred stock. (Id. ¶ 34.) Despite Lunding's demands, Biocatalyst refused to reinstate the convertible preferred stock, issue common stock to him for the preferred stock he tendered or pay him for the accrued dividends on the preferred stock. (Id. ¶ 40.) Biocatalyst also failed to pay Lunding his annual salary and bonus in accordance with the employment agreement. (Id. ¶ 98.)

Sometime before June 25, 2003, Lunding initiated an arbitration proceeding over the employment agreement dispute. (Defs.' Jt. Combined Mot. Dismiss, Ex. A.) Ultimately, the arbitrator upheld Lunding's claim, though not in the amount he had requested. (Id.) Subsequently, the arbitration award was confirmed by the Circuit Court of Cook County. (Id., Ex. C.)

## Discussion

### Subject Matter Jurisdiction

There are two kinds of Rule 12(b)(1) motions: those that attack the sufficiency of the jurisdictional allegations and those that attack the factual basis for jurisdiction. Facial attacks are subject to the same standard as motions pursuant to Rule 12(b)(6); that is, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. United Phosphorus, Ltd. v. Angus Chem. Co., 322 F.3d 942, 946 (7th Cir. 2002), cert. denied, 124 S. Ct. 533 (2003). However, in factual attacks, like this one, the Court may consider affidavits

-3-

and other evidence in deciding the motion. Id. In either case, the burden of proving that jurisdiction exists rests with the plaintiff. Id.

Defendants contend that diversity jurisdiction is lacking because: (1) the amount in controversy is dependent on the viability of the tortious interference with contract claim asserted in Count VIII of the amended complaint; and (2) that claim is barred by *res judicata*. Defendants' argument is based on a misunderstanding of the mechanics of subject matter jurisdiction. The existence of subject matter jurisdiction is determined at the time a lawsuit is filed, not weeks or months later. Grinnell Mut. Reins. Co. v. Shierk, 121 F.3d 1114, 1116 (7th Cir. 1997). Thus, if the parties are diverse and the requisite amount is in controversy at the inception of the suit, jurisdiction attaches, regardless of the impact of subsequent events. Id. ("[I]f the amount in controversy exceeds the jurisdictional amount when a suit is filed in federal court, the fact that subsequent events reduce the total amount in controversy will not divest the court of diversity jurisdiction."). As a result, even if Count VIII is now barred by *res judicata* or collateral estoppel, its dismissal will not destroy the Court's jurisdiction unless the claim was unfounded at the time the lawsuit was filed.

Illinois preclusion principles apply only to final judgments. People ex rel. Burris v. Progressive Land Developers, Inc., 602 N.E.2d 820, 824-25 (Ill. 1992) ("Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies."); American Family Mut. Ins. Co. v. Savickas, 739 N.E.2d 445, 451 (Ill. 2000) (stating that a "final judgment on the merits" is a prerequisite for collateral estoppel). The state court order on which defendants' preclusion argument is based was not issued until November 7, 2003, nearly ten months after this suit was filed. (See Defs.' Jt. Combined Mot. Dismiss, Ex. C.) Given that chronology, state preclusion principles could not

possibly have barred Count VIII at the start of this suit.[1] Because that claim, and its $700,000.00 damage request, was viable at the lawsuit's inception, the Court's diversity jurisdiction attached when the suit was filed and remains intact, regardless of the course of subsequent events. Defendants' motion to dismiss for lack of subject matter jurisdiction is, therefore, denied.[2]

## The Merits

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

Even if the Court retains jurisdiction, defendants say that the tortious interference claim must be dismissed because it is barred by preclusion principles. This is the second time defendants have raised this argument. When they did so the first time, they submitted various arbitration-related documents as support and urged the Court to take judicial notice of them. That we declined to do. (See 9/19/03 Mem. Op. & Order.) This time, defendants rely on the state court's order confirming

---

[1] The result would be the same if defendants' argument were based on the arbitration award itself, (assuming, *arguendo*, that we could accord it preclusive effect, see Brotherhood of Maint. of Way Employees v. Burlington N. R.R. Co., 24 F.3d 937, 940 (1994) (stating that "[f]ederal courts . . . enforce rules of preclusion [based on] the norms of the tribunals that rendered the judgments," and thus, preclusive effect of arbitration award "depends on the force the arbitrator . . . gives to [it]")), because the award was issued five months after Lunding filed this suit. (See Defs.' Jt. Combined Mot. Dismiss, Ex. C, 11/7/03 Order (incorporating id., Ex. A, 6/25/03 Arbitration Award).)

[2] Given the Court's resolution of this issue, we need not address Lunding's argument that his claims would satisfy the jurisdictional amount even if Count VIII were excluded from the calculation.

-5-

the arbitration award, a document that is unquestionably subject to judicial notice. See, e.g., Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994) (stating that federal court can take judicial notice of state court orders). The only question is whether that order satisfies the elements of *res judicata* or collateral estoppel under Illinois law.

The answer is no. *Res judicata* and collateral estoppel apply only if, among other things, the arbitration that the state court confirmed finally adjudicated a claim or issue that Lunding is attempting to litigate here. American Family Mut. Ins., 739 N.E.2d at 451 (stating that the "party sought to be [estopped] must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation" for collateral estoppel to apply); Progressive Land Developers, 602 N.E.2d at 825 (stating that identical causes of action in the two proceedings is a prerequisite for *res judicata*). Unfortunately, we cannot tell from either the state court order, or the arbitration award that it incorporates, which claims and issues were actually decided by the arbitrator. The arbitration award orders Biocatalyst to pay Lunding $346,632.16 "for his claim," as well as various smaller sums for fees and costs, and denies Biocatalyst's counterclaim in its entirety. (See Defs.' Jt. Combined Mot. Dismiss, Ex. A, 6/25/03 Arbitration Award.) The award does not, however, describe the claims and issues that were adjudicated or explain the arbitrator's reasoning for his decision. The state court order is similarly silent on the substance of the issues involved in the proceeding. (See id., Ex. C, 11/7/03 Order.) Absent some judicially noticeable evidence that establishes exactly what was adjudicated by the arbitration, and defendants have provided none, their motion to dismiss Count VIII on the grounds of *res judicata* or collateral estoppel is denied.

## Conclusion

For the reasons stated above, defendants' joint combined motion pursuant to Rules 12(b)(1) and 12(b)(6) to dismiss the amended complaint is denied.

ENTER:

UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT

DATED: 2-9-04